UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

LC CAROUTHERS, JR. and SHIRLEY F.
CAROUTHERS,

Case No. DK 10-07869
Chapter 13
Hon. Scott W. Dales

             Debtors.
_____/

OPINION AND ORDER
REGARDING MOTION TO LIFT STAY

PRESENT:    HONORABLE SCOTT W. DALES
                 United States Bankruptcy Judge

## I.    INTRODUCTION

This motion for relief from stay requires the court to consider the binding effect of a confirmed Chapter 13 plan on the rights of the holder of an unperfected security interest in a 2004 Chevrolet Silverado (the "Chevy") where the plan does not specifically mention the collateral or the creditor. The creditor, Honor Credit Union (the "Credit Union"), argues that "liens float through bankruptcy," and that the debtors, LC and Shirley Carouthers (the "Debtors"), have failed to adequately protect the Credit Union's interest in the Chevy. The Debtors, in contrast, argue that the vehicle vested in them at confirmation, free and clear of the Credit Union's unperfected security interest, and therefore the Credit Union no longer has any interest meriting protection.

Because the amount in controversy is relatively modest, the parties agreed to minimize expense by waiving an evidentiary hearing, and they asked the court to make its decision based on the papers submitted and review of the docket, without additional briefing. After conducting

its review of the docket and applicable authorities, the court concludes that, at confirmation, the Chevy vested in the Debtors free and clear of the Credit Union's unperfected security interest. Therefore, the court will deny the Credit Union's motion.

## II. JURISDICTION

The court has jurisdiction of the Debtors' case pursuant to 28 U.S.C. §§ 157(a) and 1334(a), and the United States District Court's local rule referring bankruptcy cases to this court. *See* LCivR 83.2(a) (W.D. Mich.). In addition, the court has jurisdiction to enforce its own orders. *Travelers Indemnity Co. v. Bailey*, 129 S.Ct. 2195, 2205 (2009); *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934). This contested matter falls within the court's "core jurisdiction" under 28 U.S.C. § 157(b)(2)(K) and (L).

## III. BACKGROUND

On March 1, 2005, the Debtors borrowed money from the Berrien Teachers Credit Union[1] and offered the Chevy as collateral to secure the debt. The Debtors claim they do not remember collateralizing the debt, and the Credit Union has not challenged this assertion or alleged any bad faith. Indeed, on their schedules, the Debtors listed the Credit Union as an unsecured creditor. For its part, the Credit Union asserts a security interest in the Chevy and filed its claim as "secured" but concedes that its claim is unperfected.

In their Chapter 13 plan (the "Plan," DN 6, 29 & 33), the Debtors proposed to pay their unsecured creditors a *pro rata* share of a fixed amount of $20,000.00 or a plan term of 36 months, whichever yielded more. In addition, the Plan includes a section entitled "Secured

---

[1] According to the Credit Union's proof of claim, Berrien Teachers Credit Union is now known as Honor Credit Union. In this opinion, the court's references to the Credit Union include both names.

Creditors" in which the Debtors prescribe detailed treatment of five specifically identified secured creditors, the last two of which hold security interests in two of the Debtors' cars— a 2006 Cadillac and a 2004 Jeep Liberty. *See* Plan, DN 6, pages 10-11, § C(3)(3-4). Under the section dealing with "Unsecured Creditors," the Plan provides the following:

> Claims in this class are to be paid from funds available after the dividends to secured and priority creditors and monthly payments to creditors indicated in the classes above. The payment allowed to the general unsecured claimants will be satisfied by: Payment of a *pro rata* share of a fixed amount of $20,000 set aside for creditors in this class or a plan term of 36 months, whichever pays more.

*See* Plan, DN 6, at p.12, § F(1).

The Debtors' Plan did not specifically refer to the Credit Union by name; it did not explicitly preserve the Credit Union's supposed lien; and it did not treat the Credit Union as a secured creditor in any way. In other words, the only treatment of the Credit Union's claim in the Debtors' Plan is inferentially as an unsecured creditor.

The Credit Union does not dispute that it received notice of the Debtors' bankruptcy filing, or their Plan, or the confirmation hearing. The court confirmed the Plan on November 15, 2010, after the Debtors addressed the Chapter 13 trustee's unrelated objection. The Credit Union did not object to the Plan, did not appeal from the court's confirmation order, and did not seek other relief from that order.

Several months after confirmation, the Credit Union filed a one-page Motion for Lift of Stay (the "Motion," DN 42) requesting permission to repossess the Chevy, sell it, and apply the proceeds to the debt. In the Motion, the Credit Union states that it had not received any payments on its claim or any offers of adequate protection, and that cause exists to lift the stay.

The Debtors opposed the Motion in a similarly short response, claiming that they hold the Chevy free of the Credit Union's security interest.  At the hearing to consider the Motion on May 10, 2011, the Debtors amplified their response by arguing that the *res judicata* effect of the confirmed Plan is enough to avoid the Credit Union's lien under the Supreme Court's recent decision in *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367 (2010). They ask the court to declare that they hold the title to the Chevy free and clear of any claims because the Credit Union's lien was extinguished upon confirmation when the Chevy vested in the Debtors. *See* 11 U.S.C. § 1327(b) and (c).

At oral argument on May 10, 2011, the Credit Union further argued that the Debtors failed to take affirmative action to avoid the Credit Union's lien or interest, and the lien therefore "passes through the bankruptcy unaffected." *See Dewsnup v. Timm*, 502 U.S. 410 (1992).

## IV.   ANALYSIS

Two years ago, in a contested matter virtually "on all fours" with the present dispute, this court ruled that a Chapter 13 plan that failed to specifically identify a secured claim could not be construed to invalidate the lien the debtors did not know existed. *See In re Harris*, Case No. 04-02258, slip op. (Bankr. W.D. Mich. Aug. 9, 2009).  The court reached this conclusion as a matter of constitutional due process —and despite its view of the statute that favored the debtors— because it felt constrained to follow the Sixth Circuit's opinion in *In re Reuhle*, 412 F.3d 679 (6th Cir. 2005). Although this court would have construed the Harrises' Chapter 13 plan as vesting the real estate in them "free and clear" of their creditor's latent lien, the court nevertheless upheld the lien after finding itself unable to distinguish *Reuhle* in a principled way.

*See Harris, supra,* at p. 14 (concluding, based on *Reuhle*, that the requirement of an adversary proceeding has constitutional significance in our Circuit).

Soon after this court issued its opinion in *Harris*, the United States Supreme Court issued its decision in *Espinosa, supra*, which the court reads as undercutting the constitutional significance of Fed. R. Bankr. P. 7001, fortifying the binding effect of Chapter 13 plans under 11 U.S.C. § 1327, and permitting the court to revisit the conclusion it reluctantly reached in *Harris*.

When referring to the treatment of claims, most Chapter 13 plans specifically identify secured creditors but refer only generally to unsecured creditors. As the court observed in *Harris,* "language such as 'the debtor will pay a 10% dividend to unsecured creditors' or 'unsecured creditors will share *pro rata* the funds remaining after payment of secured and priority claims' is not uncommon, and is universally held to 'provide for' unsecured claims for the purposes of a Chapter 13 discharge." *See Harris, supra,* at p.5 (citing 11 U.S.C. § 1328(a)). In other words, a debtor need not specifically list unsecured creditors by name *in the plan* in order for the court to find that the plan provides for this class of claims.

Many plans specifically identify secured creditors (and their collateral), but refer only generally to unsecured creditors. This drafting convention works well when there is no dispute regarding which creditors are secured or unsecured. However, when a dispute about a creditor's secured status arises post-confirmation, "this drafting convention raises difficult issues of statutory interpretation and constitutional law." *Id.* Courts have taken diverse approaches in deciding the degree of specificity that Chapter 13 plans and the Due Process Clause require with respect to secured claims. *Compare Cen-Pen Corp. v. Hanson*, 58 F.3d 89 (4th Cir. 1995) *with In re Pence*, 905 F.2d 1107 (7th Cir. 1990); *see generally In re Hudson,* 260 B.R. 421 (Bankr. W.D. Mich. 2001) (discussing issue in the context of conflict between claims administration and

confirmation processes and rejecting *Cen-Pen*); Eric S. Richards, *Due Process Limitations on the Modification of Liens Through Bankruptcy Reorganization*, 71 Am.Bankr.L.J. 43, 64-101 (1997) (grouping reported decisions within three categories); Keith M. Lundin, *Chapter 13 Bankruptcy* § 233-1, 3rd Edition (Bankruptcy Press, Inc. Nashville, TN 2007).  The controversies in *Harris* and in the present dispute illustrate these difficulties.

As a matter of statutory construction, the court must decide whether the Plan "provides for" the Credit Union's claim within the meaning of 11 U.S.C. § 1327(c).  Stated differently, the court must decide whether the vesting of the Chevy in the Debtors that occurred under § 1327(b) liberated the vehicle from the interest the Credit Union now asserts.  Second, assuming the Chevy vested in the Debtors "free and clear" under the statute, the court must determine whether such vesting comports with the Due Process Clause.

Whether the Debtors' Plan binds the Credit Union and vitiates its security interest depends on whether the Plan "provides for" the Credit Union's claim within the meaning of the applicable statute, which provides as follows:

> Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor *provided for* by the plan.

11 U.S.C. § 1327(c) (emphasis added).  The section of the Plan pertaining to secured creditors plainly omits any reference to the Credit Union or its claim.  Significantly, the Plan never mentions the Credit Union by name and certainly does not provide for retention of its interest as required by 11 U.S.C. § 1325(a)(5)(B)(i)(I).  If the Credit Union truly had a secured claim prior to confirmation, this Plan treatment would be inconsistent with the Bankruptcy Code.  In addition, to the extent the Plan challenges the "validity, priority, or extent" of the Credit Union's interest, its treatment would also be contrary to Fed. R. Bankr. P. 7001(2), which generally

requires an adversary proceeding for such contests. Reflecting these authorities, the Credit Union argues that the plan confirmation process cannot invalidate its lien, and therefore its lien passed through the bankruptcy unaffected.

Nevertheless, the statute requires the court to ask only whether the Plan provided for the Credit Union's claim, not whether it provided for the Credit Union's secured claim (a term used throughout the Bankruptcy Code),  and not whether the Plan complied with the Bankruptcy Code.   Section 1327(c) uses the phrase "claim or interest."   Because the word "or" is a disjunction, the property of the estate vests in the Debtors free and clear if the Plan either provides for the claim or provides for the interest.  *See* 11 U.S.C. § 102(5).

According to the Debtors, the Plan "provides for" the Credit Union's claim by including it inferentially within the Plan's discussion of unsecured creditors.  As noted above, the Debtors listed the Credit Union as an unsecured creditor on Schedule F and included it on the creditor matrix or service list.  Moreover, the Plan provided for a payment to unsecured creditors.

To understand what it means to "provide for" a claim, the court looks to other Chapter 13 provisions for guidance.  Significantly, Congress used the same "provided for" language in the Chapter 13 provisions dealing with discharge of "debts."  *See* 11 U.S.C. § 1328(a) (the court shall grant the debtor a discharge "of all debts provided for by the plan . . ."); *Rake v. Wade*, 508 U.S. 464, 474 (1993).  Therefore, in answering the question of whether the Plan provided for the claims of the Credit Union, the inquiry should be the same under 11 U.S.C. § 1328(a) and § 1327(c).  *See United Savings Assn. of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371 (1988) (statutory terms are often "clarified by the remainder of the statutory scheme - because the same terminology is used elsewhere in a context that makes [their] meaning clear, or because only one of the permissible meanings produces a substantive effect

that is compatible with the rest of the law"); *but see In re Jones*, 238 B.R. 338, 344 (Bankr. W.D. Mich. 1999) ("While a secured creditor is bound by a plan's provisions regarding a debtor's personal liability, a secured creditor's *in rem* rights are another matter").

Under recognized canons of statutory construction, it is impossible to hold that the Debtors' Plan "provided for" the Credit Union's *in personam* rights and discharged its claim pursuant to § 1328(a) simply by making a categorical reference to "unsecured creditors" yet find that the Plan failed to "provide for" the Credit Union's claim for purposes of extinguishing its lien. *In re Cody*, 246 B.R. 597 (Bankr. E.D. Ark. 1999); *Crites v. Oregon (In re Crites)*, 201 B.R. 277 (Bankr. D. Or. 1996); *In re Daniel*, 107 B.R. 798 (Bankr. N.D. Ga. 1989). Given the nearly identical language in Sections 1328(a) and 1327(c), the court concludes that the Debtors' Plan "provided for" both components of the Credit Union's claim, *in personam* and *in rem*— contrary to Fed. R. Bankr. P. 7001(2)—but provided for the Credit Union's claim nevertheless.

The question of whether the Debtors' Plan and the court's Confirmation Order should be accorded finality ultimately depends upon whether the Plan and the confirmation process in this case afforded the Credit Union the constitutionally-mandated due process of law. As such, the requirement that liens cannot be invalidated without an adversary proceeding pursuant to Fed. R. Bankr. P. 7001(2) is of no moment, so long as the Due Process Clause is not offended. *Espinosa, supra*. Recognizing the centrality of the Due Process Clause in any proceeding requiring finality, yet acknowledging the need for practicality and flexibility, the Supreme Court many years ago explained the Due Process Clause in this familiar and helpful passage:

> An elementary and fundamental requirement of due process in any proceeding which has to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of

the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied.

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950); *Espinosa,* 130 S.Ct. at 1378; *Jones v. Flowers*, 547 U.S. 220, 225 (2006). The Credit Union does not dispute that it received actual notice of the Debtors' bankruptcy case, or even that it received a copy of the Plan that failed to list it among the secured creditors or preserve its lien. The question, then, is whether the notice the Credit Union received from the Plan was such that it "convey[ed] the required information," giving "due regard for the practicalities and peculiarities of the case." *Mullane, supra*.

First, the court acknowledges that the Plan does not mention the Credit Union or its supposed claim of interest by name. Nevertheless, the Plan's specific enumeration of five secured creditors other than the Credit Union, coupled with well-established interpretative principles, the statute's requirement that a plan must specifically preserve liens, and the Debtors' Schedules D and F, all give rise to the inescapable inference that the Credit Union would be treated as an unsecured creditor under the Plan unless it objected to this treatment. Because the Credit Union received actual notice of the filing and contents of the Debtors' Plan, the court finds that the Credit Union received the process that is due, even though the Debtors or their trustee never filed an adversary proceeding as Fed. R. Bankr. P. 7001(2) generally requires. *See Espinosa*, 130 S.Ct. at 1378.

With regard to the crucial issue of whether the Plan preserves the lien as required under 11 U.S.C. § 1325(a)(5)(B)(i)(I), the Plan is not ambiguous: it does not preserve any interest of the Credit Union. The court finds the Seventh Circuit's approach to the Due Process Clause in

the reorganization context highly persuasive. *See In re Harvey*, 213 F.3d 318, 322 (7th Cir. 2000) ("[if the secured creditor] was genuinely uncertain about the combined effect of the short and long forms (a total of four pages), it was obligated to raise this issue with the bankruptcy court prior to the original plan confirmation"); *In re Penrod*, 50 F.3d 459 (7th Cir. 1995) (chapter 11 case to similar effect); *In re Pence*, 905 F.2d 1107, 1109 (7th Cir. 1990) (chapter 13 prohibits a creditor from "stick[ing] its head in the sand and pretend[ing] it would not lose any rights by not participating in the proceedings"); *cf. In re Hudson*, 260 B.R. at 440 (distinguishing *Cen-Pen Corp. v. Hanson*, 58 F.3d 89 (4th Cir. 1995), and similar authorities, and observing that "[n]otice problems should be addressed in the proper context rather than being utilized as a reason to disregard the Bankruptcy Code-mandated binding effect of a confirmed plan").

The Supreme Court's oft-cited *Mullane* decision directs the court to consider whether the Credit Union received notice reasonably calculated to apprise it of the pendency of the confirmation hearing and afford it an opportunity to present objections. *Mullane*, 339 U.S. at 314-15. The Credit Union admits that it received notice of the commencement of the case and the confirmation hearing, and the unchallenged proof of service confirms that it was served with the Plan.

The quality of the notice "must be of such nature as reasonably to convey the required information." *Id.* Here, the Plan's omission of the Credit Union from the section dealing with secured creditors reasonably conveyed the required information. The court finds that no person reading the Plan could have assumed that the Debtors intended to preserve the Credit Union's interest or accord that entity any benefits as a secured creditor.

As in *Espinosa*, the mere fact that a plan objection might have been successful does not license the court to disregard the binding effect of the Plan as confirmed.

## V.   CONCLUSION & ORDER

The court finds that the Credit Union received constitutionally sufficient notice that its interest was in jeopardy. Because enforcing the Plan under these circumstances does not offend the Due Process Clause, the Credit Union's security interest did not pass through bankruptcy unaffected.  In other words, principles of finality and the *res judicata* effect of the Plan have foreclosed the Credit Union from asserting its interest.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion (DN 42) is DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order Regarding Motion to Lift Stay upon Stephen L. Langland, Esq., Jeremy Shepherd, Esq., Barbara P. Foley, Esq., LC Carouthers, Jr. and Shirley F. Carouthers, pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4.

**IT IS SO ORDERED.**

Scott W. Dales
United States Bankruptcy Judge

**Dated: May 27, 2011**